UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JEFFREY M. SAMM, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO. 3:05-CV-181 RM |
| | ) | |
| FINI COMPRESSORS *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER AND OPINION**

Plaintiff Jeffrey Samm ("Samm") filed this products liability action on January 12, 2005, alleging that a defective air compressor injured him. On February 17, 2006, Defendants Fini Compressors ("Fini") and Coltec Industries, Inc. ("Coltec") filed separate motions for protective orders. For the following reasons, the motions for protective orders [Doc. Nos. 42 & 43] are **GRANTED IN PART** and **DENIED IN PART**.

**I.   RELEVANT BACKGROUND**

On April 15, 2004, Samm alleges that he was injured while using a defective air compressor. As a result, on April 16, 2004, Jonathan Forker, an attorney representing Samm, contacted John Mayo, Coltec's in-house counsel, regarding the incident. Mr. Forker, agreed to let Coltec's representative inspect the compressor. Mr. Forker states in his affidavit that Mr. Mayo agreed to share the results of the inspection with Samm. On April 20, 2004, Mr. Gary Hyer, a representative from Coltec inspected the air compressor. Coltec again inspected the air compressor on May 6, 2004. During both of these inspections, the representatives from Coltec took notes. In addition, Samm and his attorney were allowed to videotape and watch the inspections.

On January 12, 2005, Samm, who is no longer represented by Mr. Forker, filed this products liability action.  On November 30, 2005, Samm filed a motion to compel interrogatories and requests for production based upon Mr. Mayo's earlier agreement to produce the results of the inspection  This Court held an in-court hearing on January 27, 2006, to address Samm's motion to compel.  In their responses and at the hearing, both Fini and Coltec argued that some of the requested materials were protected by the attorney-client privilege or the work product doctrine.  However, at that time, neither Defendant had filed a motion for a protective order.  Therefore, on January 30, 2006, this Court gave the Defendants Coltec until February 17, 2006, to file motions for protective orders.

On February 17, 2006, both Fini and Coltec filed motions for protective orders arguing that the materials listed on their privilege logs are protected by the attorney-client privilege, the work product doctrine, or the joint defense privilege.  Samm argues that the materials are either not protected, or that the Defendants have waived their protection and the privilege.  This Court may rule on the motions for protective orders pursuant to its referral order and 28 U.S.C. § 636(b)(1)(A).

**II.     APPLICABLE LAW**

Fed. R. Civ. P. 26 (b)(1) permits discovery into "any matter, not privileged, that is relevant to the claim or defense of any party."  Relevant information need not be admissible at trial so long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26 (b)(1). For the purpose of discovery, relevancy will be construed broadly to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." Chavez v. Daimler Chrysler, 206

F.R.D. 615, 619 (S.D. Ind. 2002) (quoting <u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351(1978)).

An attorney-client privilege applies in the following situations:

> Where legal advice of any kind is sought from a professional legal adviser in his capacity as such, the communications relating to that purpose, made in confidence by the client, are at his instance permanently protected from disclosure by himself or by the legal adviser, except the protection may be waived.

<u>U.S. v. Evans</u>, 113 F.3d 1457, 1461 (7th Cir. 1997).  Statements made by a client to his attorney in the presence of a third party destroys the attorney-client privilege.  <u>Id</u>.  The party seeking to invoke the privilege bears the burden of proving its existence.  <u>Id</u>.  However, because the privilege has the effect of withholding relevant information, courts construe the privilege to apply only where necessary to achieve its purpose.  <u>U.S. v. BDO Seidman</u>, 337 F.3d 802, 811 (7th Cir. 2003).

Fed. R. Civ. P. 26(b)(3), known as the work product doctrine, states that a party may obtain discovery of documents that were prepared in anticipation of litigation only upon a showing of substantial need and that undue hardship would occur in obtaining the material through other means.  Investigative reports, which come into existence because of, and not in spite of, some articulable claim likely to lead to litigation may sometimes be protected under the work product doctrine.  <u>Caremark</u>, <u>Caremark, Inc. v. Affiliated Computer Services, Inc.</u>, 195 F.R.D. 610, 614 (N.D. Ill. 2000).  However, to be covered under the work product doctrine, a primary motivating factor behind creating the report must be to aid in litigation.  <u>Binks Mfg. Co. v. National Presto Industries, Inc.</u>, 709 F.2d 1109, 1119 (7th Cir. 1983).  In <u>Binks</u>, the court held that "the mere contingency that litigation may result is not determinative. If in connection with an accident or an event, a business entity in the ordinary course of business conducts an

3

investigation for its own purposes, the resulting investigative report is produceable in civil pre-trial discovery." Id. at 1119. See also Logan v. Commercial Union Ins. Co., 96 F.3d 971, 977 (7th Cir. 1996) (stating that courts must distinguish between investigative reports developed in the course of business and those prepared because "some articulable claim, likely to lead to litigation...has arisen").

The work product privilege is based on the attorney's right, not the client's, to enjoy privacy. Anderson v. Torrington Co., 120 F.R.D. 82, 86 (N.D. Ind. 1987). Because attorneys often rely on the assistance of others, the work product doctrine also protects material produced by the agents of the attorney. BASF Aktiengesellschaft v. Reilly Indus., 224 F.R.D. 438, 441 (S.D. Ind. 2004) (citing U.S. v. Nobles, 422 U.S. 225 (1975)). The party invoking the work product privilege bears the burden of proving its existence. Binks, 709 F.2d at 1119. Additionally, the work product privilege may be waived if documents are disclosed to a third party in a manner that substantially increases the opportunity for potential adversaries to obtain the information. Vardon Golf Co. v. Karsten Mfg. Corp., 213 F.R.D. 528, 534 (N.D. Ill. 2003).

Finally, when co-defendants share information for any common defense purpose, those materials will also be protected from disclosure. U.S. v McPartlin, 595 F.2d 1321, 1336-37 (7th Cir. 1979). The joint party privilege or common interest doctrine is not an independent source of confidentiality. BASF, 224 F.R.D. at 440. Rather, the joint party privilege simply extends the attorney-client privilege and work product privilege. Id. Thus, a court must first determine whether the underlying privileges apply before determining if the joint party privilege applies. Id.

4

**III.** **FINI'S MOTION FOR A PROTECTIVE ORDER**

Fini seeks to protect thirteen documents from disclosure by asserting that they are protected by attorney-client privilege, the work product doctrine, or the joint defense privilege.

**A.** Items Numbered 1-7, & 11

Fini first alleges that documents 1-7, & 11 are documents from a consulting engineer prepared on behalf of its attorney and communications from its employees.  Thus, Fini argues that the documents are protected by the work product doctrine and the attorney-client privilege, respectively.  In his response, Samm does not contest Fini's allegations.  As a result, this Court may assume that Samm does not dispute that these materials are covered by a privilege.  Consequently, Fini's motion for a protective order with respect to items number 1 through 7 and 11 is **GRANTED**.

**B.** Items Numbered 8, 9, & 13

In addition, Fini claims that documents 8, 9, and 13 are protected by the work product privilege.  These documents are communications from Fini's longstanding distributors which are not parties to this litigation.  Fini contends that it was only because of their longstanding relationship and their joint anticipation of this litigation that the distributors sent the documents.

To properly assert the work product privilege, Fini must prove that the materials were gathered or created in anticipation of litigation.  Simply asserting that they were created by a third party in anticipation of litigation does not satisfy Fini's burden.  The third parties have no interest in this litigation.  Therefore, merely because third parties were anticipating this litigation is insufficient to create work product protected documents. Just because Fini was on notice of this litigation does not mean that every subsequent communication it had with any distributor

would therefore be protected by the privilege.  Rather, it appears that these documents came into existence in spite of, and not because of litigation. Consequently, Fini has failed to meet its burden of showing how the third party documents are protected by the work product doctrine. This Court therefore **DENIES** Fini's motion for a protective order for documents 8, 9, and 13. In accordance with Samm's motion for a protective order, this Court **ORDERS** Fini to produce these documents to Samm by **May 12, 2006**.

      C.      Items Numbered 10 & 12

Finally, Fini claims that documents 10 and 12 are protected by the joint defense privilege. To properly assert the joint privilege defense, either the attorney-client privilege or work product doctrine must protect the document with the original disclosing party.  However, Fini, who has the burden of proving a privilege exists, simply refers to the documents as "correspondence" without indicating which underlying privilege applies.  Furthermore, Coltec's motion does not shed any light as to the nature of these documents as it does not appear that Coltec has asserted a privilege with regards to these documents.

Not all communications are protected by the work product doctrine.  Fini should have provided this Court with a more accurate description of the documents so that this Court could ascertain the exact nature of the communications.  In accordance with BDO Seidman which requires this Court to narrowly construe privileges, this Court finds the reference of "correspondence" far too vague to determine whether the document was originally protected. Consequently, because Fini has failed to sufficiently articulate that any privilege applies in relation to documents numbered 10 and 12, this Court **DENIES** Fini's motion for a protective

6

order for items numbered 10 and 12, and **ORDERS** Fini to produce them to Samm by **May 12, 2006**.

IV.     Coltec's Motion for a Protective Order

In its motion, Coltec moves for two forms of a protective order. First, Coltec agrees to produce some relevant information, but seeks a protective order to prevent the disclosure of its proprietary business information to third parties. Coltec then seeks a protective order which would prevent it from disclosing various materials to Samm because the materials are protected by the attorney-client privilege, the work product doctrine, or the joint defense privilege.

     A.     Motion to Protect Proprietary Business Information

Coltec asserts that a protective order is needed to prevent the authorized disclosure of its proprietary business information to third parties. In their motion, Coltec has demonstrated that its proposed protective order complies with the standards set forth in Citizens First National Bank of Princeton v. Cincinnati Insurance Co., 178 F.3d 943, 944 (7th Cir. 1999). In addition, in his response Samm states that he does not object to a protective order governing the disclosure of Coltec's proprietary business information. As a result, Coltec's motion in this regards is **GRANTED**.

     B.     Notes and Reports Taken on or After the Inspection of the Compressor

Coltec claims that the notes taken by its employees and consultants during the inspection of the air compressor are protected by the work product privilege because those inspections and notes were prepared in anticipation of litigation. Coltec inspected the compressor after Samm's former counsel contacted Coltec about the accident. Because Coltec was aware that Samm had already contacted an attorney as a result of the accident, it is likely that the air compressor was

inspected and the notes were prepared in anticipation of litigation. As a result, the work product doctrine applies.

Samm has also not demonstrated any substantial need or undue hardship in obtaining the information regarding the air compressor. Samm is in possession of the air compressor and is free to conduct his own inspection. Samm and his attorney were also present for and videotaped Coltec's inspections. In addition, Samm is able to depose the individuals regarding the facts involved in the inspections. In short, the desired notes are protected as work product and Samm has failed to show a substantial hardship to overcome the privilege.

Samm then argues that Coltec waived the privilege when Mr. Mayo, its in-house counsel, agreed to share the results of its inspections. However, it does not appear that there were any results of the inspections to share. Rather, the only product of the inspections were the mental impressions recorded in the notes. Had there been actual testing results, Coltec, by the agreement of its counsel, would be required to produce those results. However, as there were no results to report from the investigation, counsel's agreement to provide the results does not act as a waiver of the entire work product privilege. The mental impressions that arose from the inspection are the types of information that the work product doctrine seeks to protect.

Samm also contends that Coltec waived the privilege because it has provided some of the materials to Fini. However, any communications between Fini and Coltec are protected by the joint privilege defense. Samm asserts that the Defendants' interests are not similar because Coltec has asserted a claim for indemnity against Fini. However, until a claim for indemnity becomes ripe, which is typically at the end of the underlying suit, Fini and Coltec have similar interests in this matter. As a result, because they are both co-defendants with similar interests,

the joint defense privilege applies.  Therefore, any communications that Coltec has given to Fini in which Coltec has a legitimate work product privilege are protected by the joint defense privilege.  Consequently, Plaintiff's motion for a protective order of the notes and reports of its employees and consultants who investigated the compressor is **GRANTED.**[1]

    C.    <u>Depositions</u>

Coltec also states that if Samm deposes its employees, Samm may ask the employees questions regarding the May 6, 2004 investigations.  However, Coltec then makes a blanket assertion that Samm is not entitled to ask any questions related to Coltec's investigation after May 6, 2004.  Coltec therefore, seeks a protective order on this issue.  This Court does not know whether Samm will depose these individuals or what questions he may ask if he does.  What Coltec is requesting would require this Court to make an advisory opinion regarding the nature and scope of Samm's questioning.  Although the work product doctrine is broad, it must be raised with particularity.  This Court will not anticipate Samm's questions nor prohibit him from asking any questions that may not implicate the privilege.  Rather, if during the course of a deposition, Coltec feels that certain questions infringe upon a privilege, pursuant to Fed. R. Civ. P. 30(d), Coltec's proper recourse is to object to the questioning at the deposition.  Parties will then have the opportunity to come to a mutually agreeable resolution concerning the dispute.  If the parties cannot reach an agreement, after the parties have complied with Fed. R. Civ. P. 37 and N.D. L.R. 37.1, the parties may file the appropriate motion.  Coltec's motion regarding the deposition testimony is **DENIED**.

---

[1] It appears that Coltec is also asserting the attorney-client privilege in regards to the notes that were prepared by its employees and given to Mr. Mayo as a result of the inspection.  As the work product doctrine applies to these notes, this Court need not address whether the attorney-client privilege applies.

D.	Ancillary Matters

From Samm's response, it appears that he is suggesting that Coltec has in its possession other documents which appear on Fini's privilege log, but not Coltec's.  Samm argues that these materials must be provided.  However, in its response, Coltec asserts that it does not have these documents in its possession. This Court cannot order Coltec to produce documents that it does not currently posses.

V.	CONCLUSION

For the aforementioned reasons, the motions for protective orders [Doc. Nos. 42 & 43] are **GRANTED IN PART** and **DENIED IN PART**.  Specifically, this Court rules as follows:

- **GRANTS** Fini's motion [Doc. No. 42] as it relates to Documents 1-7, & 11;

- **DENIES** Fini's motion as it relates to Documents 8-10, 12-13.  Fini has until **May 12, 2006**, to produce the requested documents;

- **GRANTS** Coltec's motion [Doc. No. 43] as it relates to a protective order regarding its proprietary business information;

- **GRANTS** Coltec's motion as it relates to the notes and reports resulting from the inspection of the air compressor; and

- **DENIES** Coltec's motion as it relates to deposition testimony.

**SO ORDERED.**

Dated this 11th Day of April, 2006.

s/Christopher A. Nuechterlein
Christopher A. Nuechterlein
United States Magistrate Judge
